UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RAYMOND BRIAN RUIZ,<br><br>               Plaintiff,<br><br>   v.<br><br>SGT. LEWIS,<br><br>               Defendant. | Case No. C16-0023-RAJ-MAT<br><br>REPORT AND RECOMMENDATION |

INTRODUCTION AND SUMMARY CONCLUSION

This is a civil rights action brought under 42 U.S.C. § 1983. Plaintiff Raymond Ruiz asserts in his amended civil rights complaint that his due process rights were violated during the course of his confinement at the Snohomish County Jail in the summer of 2015. Plaintiff also asserts state law causes of action of slander and defamation. Snohomish County Corrections Sergeant Scott Lewis is the only defendant remaining in this action.[1] Defendant Lewis now moves for summary judgment. Plaintiff, despite having been advised of the summary judgment requirements pursuant to *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998), has filed no response

---

[1] Plaintiff identified the Snohomish County Jail as a defendant in his amended complaint filed on February 3, 2016. (*See* Dkt. 10.) However, the Snohomish County Jail was dismissed from this action prior to service. (Dkt. 11.)

REPORT AND RECOMMENDATION
PAGE - 1

to defendant's motion.

The Court, having now carefully reviewed defendant's motion for summary judgment, and the balance of the record, concludes that defendant's motion should be granted, albeit for reasons slightly different than those argued by defendant in his motion, and that plaintiff's amended complaint and this action should be dismissed with prejudice as to plaintiff's federal due process claims and without prejudice as to plaintiff's state law claims.

## FACTS

Plaintiff Raymond Ruiz was booked into the Snohomish County Jail (SCJ) on June 26, 2015, on multiple charges including domestic violence assault and attempting to take a motor vehicle without permission.  (*See* Dkt. 26, Ex. B.)  On August 24, 2015, plaintiff's cellmate spoke to SCJ Corrections Deputy (CD) Lyons and requested that he be placed in protective custody.  (*See* Dkt. 25 at 2 and Ex. B.)  CD Lyons contacted defendant Lewis to inform him of the request and to advise that he would have another deputy escort plaintiff's cellmate to the F-3 module which was at that time being temporarily used as maximum security housing.  (*See id*.)  CD Fairfax thereafter escorted plaintiff's cellmate from the F-2 general population module, where he had been housed with plaintiff, to the F-3 module.  (*Id*.)

Once plaintiff's cellmate arrived in the F-3 module, defendant Lewis spoke with him and inquired as to the reason he had asked to be placed in protective custody.  (*Id*. at 2-3 and Ex. B.)  The cellmate revealed to defendant Lewis that plaintiff had demanded sexual favors from him in exchange for extra food and that he no longer felt safe in his unit.  (*See id*. at 3 and Ex. B.)  In accordance with SCJ policies and procedures regarding allegations of sexual harassment, defendant Lewis ordered that plaintiff's cellmate be held in the F-3 module on maximum security status until he could be reclassified.  (*See* Dkt. 25 at 2-3 and Ex. B.)  Defendant Lewis

also instructed another deputy to move plaintiff to the F-1 module on maximum security status pending reclassification. (*Id*.)

While plaintiff was being moved to the F-1 module, his cell was searched and corrections staff found a cartoon drawing of an animal eating with the phrase, "It's crazy what people will do for food in here!  Holy S***!" (profanity redacted by defendant). (*Id*.)  Defendant Lewis thereafter drafted a written rule violation against plaintiff for sexual harassment for attempting to coerce his cellmate to engage in sexual favors in exchange for extra food. (*See id*.)  Defendant Lewis did not deliver a written copy of the rule violation to plaintiff, but maintains that he did arrange for plaintiff to be served with a copy of it by a "responding deputy." (*See* Dkt. 25 at 3-4.)  In addition to writing a rule violation, defendant Lewis also completed a Prison Rape Elimination Act (PREA) checklist relating to the incident.[2] (*Id*.)

On August 26, 2015, two days after plaintiff was moved to maximum security housing, the SCJ Classification Committee met to review plaintiff's status. (Dkt. 24 at 3.)  The Classification Committee determined that based on the allegations of plaintiff's cellmate, plaintiff's continued housing in a maximum security module was appropriate for safety and security reasons. (*Id*.)  Plaintiff remained in the maximum security module until he was released from custody on September 3, 2015. (*Id*. at 4.)

## DISCUSSION

Plaintiff appears to assert in his amended civil rights complaint that defendant Lewis violated his due process rights, and state law, when defendant Lewis had plaintiff moved to maximum security housing on August 24, 2015 pending reclassification. (*See* Dkt. 10 at 3-4.)

---

[2] The PREA checklist requires, as a response to a report of inmate-on-inmate sexual harassment, separation of the alleged perpetrator from the alleged victim, which is what occurred in this instance. (*See* Dkt. 25 at 2 and Ex. A.)

REPORT AND RECOMMENDATION
PAGE - 3

Plaintiff contends that while confined in maximum security housing, he never received a rule violation or a hearing, and he never had a clear understanding of why he was there. (*Id*. at 3.) Defendant Lewis moves for summary judgment, arguing that he is entitled to qualified immunity because plaintiff cannot establish that he violated a clearly established right. (*See* Dkt. 23.)

## Summary Judgment Standard

Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there exists "no genuine dispute as to any material fact" such that "the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Material facts are facts which might affect the outcome of the pending action under governing law. *See Anderson*, 477 U.S. at 248. Genuine disputes are those for which the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Id*.

In response to a properly supported summary judgment motion, the nonmoving party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts demonstrating a genuine issue of fact for trial and must produce evidence sufficient to establish the existence of the elements essential to his case. *See* Fed. R. Civ. P. 56(e). A mere scintilla of evidence is insufficient to create a factual dispute. *See Anderson*, 477 U.S. at 252. In ruling on a motion for summary judgment, the court may not weigh the evidence or make credibility determinations. *Anderson*, 477 U.S. at 248.

## Section 1983 Standard

In order to sustain a cause of action under 42 U.S.C. § 1983, a plaintiff must show (i) that he suffered a violation of rights protected by the Constitution or created by federal statute, and (ii) that the violation was proximately caused by a person acting under color of state law. *See*

REPORT AND RECOMMENDATION
PAGE - 4

*Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The causation requirement of § 1983 is satisfied only if a plaintiff demonstrates that a defendant did an affirmative act, participated in another's affirmative act, or omitted to perform an act which he was legally required to do that caused the deprivation complained of. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981) (citing *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)). A defendant cannot be held liable under § 1983 solely on the basis of the individual's supervisory responsibility or position. *Monell v. Department of Social Servs., of City of New York*, 436 U.S. 658, 691-694 (1978). Rather, a plaintiff must allege that a defendant's own conduct violated the plaintiff's civil rights.

## Qualified Immunity

Defendant argues in his motion for summary judgment that he is entitled to qualified immunity in this action. In *Saucier v. Katz*, 533 U.S. 194, 201 (2001), the Supreme Court set forth a two-prong test to be applied in evaluating claims of qualified immunity: (1) whether the facts alleged, when taken in the light most favorable to the party asserting the injury, show that the defendant's conduct violated a constitutional right; and (2) whether the right was clearly established. If the reviewing court concludes that no constitutional right was violated by the defendant's conduct, the court need not inquire further. *Id*. As will be explained in detail below, this Court concludes that defendant did not violate plaintiff's constitutional rights. This Court therefore does not reach the qualified immunity issue.

## Due Process

Defendant argues that plaintiff's due process rights were not violated by his placement on maximum security status because, under the Supreme Court's decision in *Sandin v. Conner*, 515 U.S. 472 (1995), plaintiff had no liberty interest in being free from administrative segregation nor any constitutional right to a particular classification or custody level. Defendant's reliance

on *Sandin* is misplaced. In *Sandin*, the Supreme Court held that an incarcerated prisoner had no liberty interest in being free from segregated confinement imposed as a disciplinary measure because such confinement did not constitute an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. at 484-86. The Supreme Court also recognized in *Sandin* that its rationale regarding convicted prisoners did not apply to pretrial detainees. *See Mitchell v. Dupnik*, 75 F.3d 517, 523-24 (9th Cir. 1996). It appears from the record before this Court that plaintiff was a pretrial detainee at times relevant to this action and not a convicted prisoner. Thus, *Sandin* does not apply.

This Court instead looks to the Supreme Court's decision in *Bell v. Wolfish*, 441 U.S. 520 (1979), a case which dealt with the interests of pretrial detainees. In *Bell*, the Supreme Court held that a pretrial detainee "may not be punished prior to an adjudication of guilt in accordance with due process of law." *Id*. at 535. The Court explained that the proper inquiry when evaluating the constitutionality of conditions or restrictions of pretrial detention is therefore whether those conditions amount to punishment of the detainee. *Id*.

While the Due Process Clause protects pretrial detainees from punishment, not every disability imposed during pretrial detention constitutes "punishment" in the constitutional sense. *Bell*, 441 U.S. at 537. Thus, the test to be applied in determining whether particular restrictions and conditions imposed during the course of pretrial detention amount to punishment in the constitutional sense is whether there was an express intent to punish, or "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]. *Id*. at 538 (quoting *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-169 (1963)).

The Supreme Court has recognized that "maintaining institutional security and preserving

REPORT AND RECOMMENDATION
PAGE - 6

internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." *Id*. at 546. The Supreme Court has further recognized that prison administrators "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Id*. at 547.

The record makes clear that both plaintiff and his cellmate were moved to maximum security housing on August 24, 2015 pending reclassification after plaintiff's cellmate made an allegation of sexual harassment against plaintiff. (*See* Dkt. 25 at 2.) According to defendant Lewis, this is the standard practice at SCJ when there is an allegation of sexual harassment. (*Id*.) Defendant Lewis explains that moving the involved parties to maximum security housing serves to ensure the safety of those inmates, and others, pending reclassification by the SCJ Classification Committee. (*Id*.)

On August 26, 2015, two days after plaintiff was placed in maximum security housing, the SCJ Classification Committee met to review plaintiff's status. (Dkt. 24 at 3.) According to SCJ Classification Counselor Terry Bloss, when considering inmate housing assignments, the Classification Committee considers such factors as whether the inmate presents any risk factors, has a potential for violence, and/or has any special needs or life safety issues. (*Id*.) After reviewing plaintiff's status, the Committee determined that, based on the allegations of plaintiff's cellmate, continued housing in a maximum security module was appropriate for reasons of safety and security. (*See id.* at 3 and Ex. A at 1.)

The evidence in the record supports the conclusion that plaintiff's initial transfer to a maximum security housing module, and his subsequent classification to maximum security

REPORT AND RECOMMENDATION
PAGE - 7

status, was consistent with constitutional principles.  Plaintiff offers no evidence demonstrating that his transfer to maximum security housing amounted to "punishment" in the constitutional sense.  It appears instead that SCJ staff, consistent with SCJ policies and procedures regarding allegations of sexual harassment, separated the individuals involved and then employed their classification system to ensure the safety and security of the inmates and to preserve internal order and discipline.  This they were entitled to do.  Plaintiff fails to establish that defendant Lewis violated his substantive due process rights and, thus, defendant Lewis is entitled to summary judgment with respect to that claim.

Plaintiff also appears to assert in his amended complaint that his procedural due process rights were violated because he did not receive a copy of the rule violation written by defendant Lewis and he did not receive a hearing on the rule violation. (Dkt. 10 at 3.)  However, plaintiff fails to allege facts demonstrating that these purported deficiencies in the process give rise to any individual liability on the part of defendant Lewis.  In fact, the evidence submitted by defendant in support of his summary judgment motion demonstrates that it was not defendant Lewis's duty to serve the written rule violation on plaintiff, or to conduct any sort of hearing with respect to the allegations of sexual harassment or plaintiff's assignment to maximum security housing.  (*See* Dkt. 25 at 6-7.)  Thus, to the extent plaintiff intends to assert a procedural due process claim against defendant Lewis, that claim fails as well.

<u>Pendent State Law Claims</u>

In addition to the federal constitutional claims asserted against defendant Phillips in plaintiff's amended complaint, plaintiff also appears to assert violations of state tort law.  The Supreme Court has stated that federal courts should refrain from exercising their pendent jurisdiction when the federal claims are dismissed before trial.  *United Mine Workers v. Gibbs*,

REPORT AND RECOMMENDATION  
PAGE - 8

383 U.S. 715, 726 (1966).  Because defendant Lewis is entitled to summary judgment with respect to plaintiff's federal constitutional claims, plaintiff's state law claims against defendant Lewis are necessarily subject to dismissal at this juncture.

## CONCLUSION

For the foregoing reasons, this Court recommends that defendant Lewis's motion for summary judgment be granted and that plaintiff's amended complaint and this action be dismissed with prejudice as to plaintiff's federal due process claims and without prejudice as to plaintiff's state law claims.  A proposed order accompanies this Report and Recommendation.

## DEADLINE FOR OBJECTIONS

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14) days** after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **September 23, 2016**.

DATED this 26th day of August, 2016.

Mary Alice Theiler
United States Magistrate Judge